MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ROSALIO LORENZO ALEMAN, ERIC
ROBLES, and BRAULIO TRUJILLO
ROMAN, *individually and on behalf of others
similarly situated,*

|                              |                                             |
|------------------------------|---------------------------------------------|
| *Plaintiffs*,                | **COMPLAINT**                               |
|                              |                                             |
| -against-                    | **COLLECTIVE ACTION UNDER**                 |
|                              | **29 U.S.C. § 216(b)**                       |
| GUAPO BODEGA LLC (D/B/A BEAUTY |                                           |
| AND ESSEX), CHRIS SANTOS (A.K.A. | **ECF Case**                             |
| CHRISTOPHER), VINCENT DOE, PETER |                                           |
| KANE, and RICHARD WOLF,      |                                             |
|                              |                                             |
| *Defendants.*                |                                             |

-------------------------------------------------------X

Plaintiffs Rosalio Lorenzo Aleman, Eric Robles, and Braulio Trujillo Roman, individually

and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their

attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against

Guapo Bodega LLC (d/b/a Beauty and Essex), ("Defendant Corporation"), Chris Santos (a.k.a.

Christopher), Vincent Doe, Peter Kane, and Richard Wolf, ("Individual Defendants"),

(collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Guapo Bodega LLC (d/b/a Beauty and

Essex), Chris Santos (a.k.a. Christopher), Vincent Doe, Peter Kane, and Richard Wolf.

2.    Defendants own, operate, or control a restaurant and lounge, located at 146 Essex Street, New York, New York 10002 under the name "Beauty and Essex".

3.    Upon information and belief, individual Defendants Chris Santos (a.k.a. Christopher), Vincent Doe, Peter Kane, and Richard Wolf, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.    Plaintiffs were employed as busboys and bar backs at the restaurant located at 146 Essex Street, New York, New York 10002.

5.    Plaintiffs were ostensibly employed as busboys and bar backs. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cleaning and sweeping the sidewalk, drying dishes, preparing the stations with plates and cups, moving tables from upstairs to the main salon, placing and constructing the tables, polishing cups, placing utensils in the washing machine and then drying them  and placing them in a container and taking them upstairs, unloading liquor deliveries and arranging them in the basement, bringing products from downstairs to the salon and kitchen, moving the chairs from downstairs, arranging the dishes and cleaning baskets of forks, spoons and knives  (hereafter the "non-tipped duties").

6.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hour's compensation for the hours that they worked.

7.    Rather, Defendants failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.     Defendants employed and accounted for Plaintiffs as busboys and bar backs in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.    Regardless, at all relevant times, Defendants paid Plaintiffs at the lower tip-credit rate.

11.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day 12 N.Y. C.R.R. §146.

12.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as busboys and bar backs instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credit rate.

13.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*.

and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a restaurant and lounge located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

19.    Plaintiff Rosalio Lorenzo Aleman ("Plaintiff Lorenzo" or "Mr. Lorenzo") is an adult individual residing in Queens County, New York. Plaintiff Lorenzo was employed by Defendants at Beauty and Essex from approximately 2011 until on or about December 8, 2018.

- 4 -

20.    Plaintiff Eric Robles ("Plaintiff Robles" or "Mr. Robles") is an adult individual residing in Bronx County, New York. Plaintiff Robles was employed by Defendants at Beauty and Essex from approximately December 2014 until on or about March 2018.

21.    Plaintiff Braulio Trujillo Roman ("Plaintiff Trujillo" or "Mr. Trujillo") is an adult individual residing in Kings County, New York. Plaintiff Trujillo was employed by Defendants at Beauty and Essex from approximately March 2015 until on or about October 2017.

*Defendants*

22.    At all relevant times, Defendants owned, operated, or controlled a restaurant and lounge, located at 146 Essex Street, New York, New York 10002 under the name "Beauty and Essex".

23.    Upon information and belief, Guapo Bodega LLC (d/b/a Beauty and Essex) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 146 Essex Street, New York, New York 10002.

24.    Defendant Chris Santos (a.k.a. Christopher) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Chris Santos (a.k.a. Christopher) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Chris Santos (a.k.a. Christopher) possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

25.   Defendant Vincent Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Vincent Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Vincent Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

26.   Defendant Peter Kane is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Peter Kane is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Peter Kane possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27.   Defendant Richard Wolf is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Richard Wolf is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Richard Wolf possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the

schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

28.   Defendants operate a restaurant and lounge located in the East Village section of Manhattan in New York City.

29.   Individual Defendants, Chris Santos (a.k.a. Christopher), Vincent Doe, Peter Kane, and Richard Wolf, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

30.   Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.   Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

32.   Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

33.   In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

34.   Upon information and belief, Individual Defendants Chris Santos (a.k.a. Christopher), Vincent Doe, Peter Kane, and Richard Wolf operate Defendant Corporation as either

an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

    a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c) transferring assets and debts freely as between all Defendants,

    d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

    e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

    f) intermingling assets and debts of their own with Defendant Corporation,

    g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

    h) Other actions evincing a failure to adhere to the corporate form.

35.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.

36.   Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37.   In each year from 2013 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.   In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

39.   Plaintiffs are former employees of Defendants who ostensibly were employed as busboys and bar backs. However, they spent over 20% of each shift performing the non-tipped duties described above.

40.   Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Rosalio Lorenzo Aleman*

41.   Plaintiff Lorenzo was employed by Defendants from approximately 2011 until on or about December 8, 2018.

42.   Defendants ostensibly employed Plaintiff Lorenzo as a busboy.

43.   However, Plaintiff Lorenzo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

44.   Although Plaintiff Lorenzo ostensibly was employed as a busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

45.   Plaintiff Lorenzo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.    Plaintiff Lorenzo's work duties required neither discretion nor independent judgment.

47.    From approximately January 2013 until on or about June 2015, Plaintiff Lorenzo worked from approximately 6:00 p.m. until on or about 12:00 a.m., 4 days a week (typically 24 hours per week).

48.    From approximately July 2015 until on or about December 8, 2018, Plaintiff Lorenzo worked from approximately 6:00 p.m. until on or about 12:00 a.m. to 1:00 a.m., 2 days a week and from approximately 10:00 a.m. until on or about 4:30 p.m., 2 days a week, three weeks per month, and from approximately 6:00 p.m. until on or about 12:00 a.m. to 1:00 a.m., 2 days a week, from approximately 10:00 a.m. until on or about 4:30 p.m., 1 day a week and from approximately 10:00 a.m. until on or about 1:00 a.m., 1 day a week. one week per month (typically 25 to 35.5 hours per week).

49.    Throughout his employment, Defendants paid Plaintiff Lorenzo his wages by check.

50.    From approximately January 2013 until on or about December 2015, Defendants paid Plaintiff Lorenzo $5.00 per hour.

51.    From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Lorenzo $7.50 per hour.

52.    From approximately January 2018 until on or about December 8, 2018, Defendants paid Plaintiff Lorenzo $8.65 per hour.

53.    Plaintiff Lorenzo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

54.    For example, Defendants required Plaintiff Lorenzo to work an additional 10 to 15 minutes past his scheduled departure time one day per week, and did not pay him for the additional time he worked.

55.    Defendants deducted $10 per week from Plaintiff Lorenzo's weekly paycheck for meals he never ate.

56.    Plaintiff Lorenzo was never notified by Defendants that his tips were being included as an offset for wages.

57.    Defendants did not accurately account for these tips in any daily or weekly accounting of Plaintiff Lorenzo's wages.

58.    Defendants required Plaintiff Lorenzo to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

59.    Furthermore, Defendants required Plaintiff Lorenzo to sign a document he did not understand, in English, upon the end of his employment.

60.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lorenzo regarding overtime and wages under the FLSA and NYLL.

61.    Defendants did not provide Plaintiff Lorenzo an accurate statement of wages, as required by NYLL 195(3).

62.    Defendants did not give any notice to Plaintiff Lorenzo, in English and in Spanish (Plaintiff Lorenzo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

63.    Defendants required Plaintiff Lorenzo to purchase "tools of the trade" with his own funds—including 5 shirts per year, 5 pants per year, and 6 pair of black shoes per year.

*Plaintiff Eric Robles*

64.     Plaintiff Robles was employed by Defendants from approximately December 2014 until on or about March 17, 2018.

65.     Defendants ostensibly employed Plaintiff Robles as a busboy.

66.     However, Plaintiff Robles was also required to spend a significant portion of his work day performing the non-tipped duties described above.

67.     Although Plaintiff Robles ostensibly was employed as busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

68.     Plaintiff Robles regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

69.     Plaintiff Robles's work duties required neither discretion nor independent judgment.

70.     From approximately December 2014 until on or about December 2015, Plaintiff Robles worked from approximately 3:30 p.m. until on or about 11:00 p.m. to 12:00 a.m., 3 days a week and approximately 8 to 9 hours per day, 2 days a week (typically 38.5 to 43.5 hours per week).

71.     From approximately January 2016 until on or about March 17, 2018, Plaintiff Robles worked from approximately 7:30 p.m. until on or about 3:00 a.m., 4 days a week and from approximately 10:30 a.m. until on or about 5:00 p.m. to 6:00 p.m., 1 day a week (typically 36.5 to 37.5 hours per week).

72.     Throughout his employment, Defendants paid Plaintiff Robles his wages by check.

73.     From approximately December 2014 until on or about December 2015, Defendants paid Plaintiff Robles $5.00 per hour.

74.     From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Robles $7.50 per hour.

75.    From approximately January 2018 until on or about March 17, 2018, Defendants paid Plaintiff Robles $8.65 per hour.

76.    Plaintiff Robles's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

77.    For example, Defendants required Plaintiff Robles to work an additional 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

78.    Defendants never granted Plaintiff Robles any breaks or meal periods of any kind.

79.    Nevertheless, from approximately December 2014 until on or about December 2016 Defendants deducted $2.50 per day, from approximately January 2017 until on or about December 2017 Defendants deducted $2.85 per day, and from approximately January 2018 until on or about March 17, 2018 Defendants deducted $3.25 per day, from Plaintiff Robles's weekly paycheck for meals he never ate.

80.    Plaintiff Robles was never notified by Defendants that his tips were being included as an offset for wages.

81.    Defendants did not accurately account for these tips in any daily or weekly accounting of Plaintiff Robles's wages.

82.    Defendants required Plaintiff Robles to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

83.    In addition, in order to get paid, Plaintiff Robles was required to sign a document in which Defendants misrepresented the hours that he worked per week.

84.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Robles regarding overtime and wages under the FLSA and NYLL.

85.   Defendants did not provide Plaintiff Robles an accurate statement of wages, as required by NYLL 195(3).

86.   Defendants did not give any notice to Plaintiff Robles, in English and in Spanish (Plaintiff Robles's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

87.   Defendants required Plaintiff Robles to purchase "tools of the trade" with his own funds—including 4 shirts per year, 4 pants per year, 3 pair of black shoes per year, 3 packets of t shirts per year, 4 packets of black socks per year.

*Plaintiff Braulio Trujillo Roman*

88.   Plaintiff Trujillo was employed by Defendants from approximately March 2015 until on or about October 2017.

89.   Defendants ostensibly employed Plaintiff Trujillo as a busboy and a bar back.

90.   However, Plaintiff Trujillo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

91.   Although Plaintiff Trujillo ostensibly was employed as a busboy and a bar back, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

92.   Plaintiff Trujillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

93.   Plaintiff Trujillo's work duties required neither discretion nor independent judgment.

94.   Throughout his employment with Defendants, Plaintiff Trujillo regularly worked in excess of 40 hours per week.

95.    From approximately March 2015 until on or about October 2017, Plaintiff Trujillo worked from approximately 4:00 p.m. until on or about 3:00 a.m., Saturdays and Sundays, from approximately 3:00 p.m. until on or about 11:00 p.m., Mondays and Tuesdays, from approximately 6:00 p.m. until on or about 2:00 a.m., Wednesdays, and from approximately 4:00 p.m. until on or about 3:00 a.m., one Friday per month (typically 46 to 57 hours per week).

96.    Throughout his employment, Defendants paid Plaintiff Trujillo his wages by check.

97.    From approximately March 2015 until on or about December 2015, Defendants paid Plaintiff Trujillo $5.00 per hour.

98.    From approximately January 2016 until on or about October 2017, Defendants paid Plaintiff Trujillo $7.50 per hour.

99.    Plaintiff Trujillo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

100.   For example, Defendants required Plaintiff Trujillo to work an additional 30 minutes to 2 hours past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

101.   Defendants never granted Plaintiff Trujillo any breaks or meal periods of any kind.

102.   Plaintiff Trujillo was never notified by Defendants that his tips were being included as an offset for wages.

103.   Defendants did not accurately account for these tips in any daily or weekly accounting of Plaintiff Trujillo's wages.

104.   Defendants required Plaintiff Trujillo to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

105.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Trujillo regarding overtime and wages under the FLSA and NYLL.

106.  Defendants did not provide Plaintiff Trujillo an accurate statement of wages, as required by NYLL 195(3).

107.  Defendants did not give any notice to Plaintiff Trujillo, in English and in Spanish (Plaintiff Trujillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

108.  Defendants required Plaintiff Trujillo to purchase "tools of the trade" with his own funds—including black shoes, dress pants and button down shirts.

*Defendants' General Employment Practices*

109.  At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

110.  Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

111.  Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

112.  Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

113.    Defendants required Plaintiffs and all other busboys and bar backs to perform general non-tipped tasks in addition to their primary duties as busboys and bar backs.

114.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

115.    Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

116.    Plaintiffs and all other tipped workers were paid at the lower tip-credit rate by Defendants.

117.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

118.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

119.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

120.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

121.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

122.    Defendants failed to maintain an accurate record of tips earned by Plaintiffs who worked as busboys and bar backs for the tips they received.

123.    Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

124.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

125.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

126.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

127.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

128.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer;

rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

129.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

130.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

131.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans

including willfully failing and refusing to pay them the required minimum wage and overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek,, as required under the FLSA.

132.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

133.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

134.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

135.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

136.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

137.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

138.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

139.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

140.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

141.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

142.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

143.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

144.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

145.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

146.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

147.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

148.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

149.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

150.   Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

151.   Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

152.   Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

153.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.   Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

155.   Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

156.   Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

157.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

159.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

160.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

162.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

163.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

165.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

166.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

168.     Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

169.     The deductions made from Plaintiffs' wages were not authorized or required by law.

Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

170.  Plaintiffs were damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the FLSA Class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the notice, recordkeeping, and wage statement requirements of the NYLL with respect to Plaintiffs', compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        January 7, 2019

                                          MICHAEL FAILLACE & ASSOCIATES, P.C.

                   By:     /s/ Michael Faillace
                                Michael Faillace [MF-8436]
                                60 East 42nd Street, Suite 4510
                                New York, New York 10165
                                Telephone: (212) 317-1200
                                Facsimile: (212) 317-1620
                                *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

December 10, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Rosalio Lorenzo Aleman

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     10 de Diciembre 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 18, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Eric Robles

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:          *Eric Robles*

Date / Fecha:              18 de Diciembre del 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 27, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Braulio Trujillo Roman

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      27 de Deciembre 2018